We'll hear argument next in Case 12-25, Maracich v. Spears. Mr. Guerra. Mr. Chief Justice, and may it please the Court. The DPPA requires express consent when personal information in DMV databases is used for bulk solicitation. The express consent requirement is Congress's considered response to one of the core problems that the DPPA targets, and the litigation exception creates no exception for lawyers. In fact, when Congress intended to create an explicit exception— Sotomayor, does it create an exception for research? Let's assume that a university wanted to do a research project and it needs subjects. I get solicited for it all the time. Does this exception apply to them, too? Our view, Your Honor, as we indicated in our reply brief, is it would not, because we believe B-12's consent requirement governs commercial bulk use of DMV information, which is clear from the fact that it's focusing on marketing and solicitation, and also from the history behind the statute, which is very much aimed at use of DMV information. But it says surveys, not just marketing or solicitations. Yes, it does, Justice Sotomayor. I mean, there is a commercial component, but there appears to be a noncommercial component as well. We think, Justice Sotomayor, that the statute is sensibly construed to, under the noceter associes principle that we're relying on elsewhere in our argument with respect to B-4, that that same principle applies to the three things that the bulk solicitation the bulk use provision governs, and particularly when you look at the history underlying the statute, which was very much aimed at use of the information for direct marketing. And so, and as I was saying, Congress made clear that it was. Sotomayor, that apply to the States, too, when they want to market against drunk driving, they want to market against, for their health insurance processes versus private processes for State drug-provided. Justice Sotomayor, I believe what your first question sounded, your first example sounded like it was a noncommercial use. I think that in the case where the State is acting as a commercial entity, the same rules we would apply with respect to lawyer solicitation would apply there. And the reason I say that, and the reason I think it's so clear that Congress intended that, really lies in the language of subsection B-2. Because there, Congress made clear that it understood that these provisions are not wholly independent permissions and, in fact, that the consent requirement governs all commercial bulk use, absent an explicit exception. And if you take a look, it's in the second page of the addendum to our opening brief, and it says that personal information may be used in connection with matters of motor vehicle market research activity, including survey research. Congress included the survey research clause because a commercial bulk survey using personal information would otherwise be governed by B-12's consent requirement, and so Congress had to make clear that it was creating an exception for one industry to engage in this one particular type of bulk use. And the reason we know that the survey research clause means that is because under Respondent's interpretation, it has no effect whatsoever. If, as they say, each of these clauses is wholly independent and sufficient to authorize whatever it covers, a phrase covering in connection with matters of motor vehicle market research activities would in and of itself cover the subset of motor vehicle market research survey research. So to give that clause any effect, you must understand that it's overriding the express consent requirement of B-12, such that you now have to, when you look at the other provisions that might authorize bulk commercial use, find a comparably explicit authorization, and you can't find that in B-4. B-4 says nothing about solicitation, much less bulk solicitation. Ginsburg-Ginzburg It says anticipation of litigation in connection. It's not only ongoing litigation, but it can be used in connection with anticipation of litigation. Yes, Justice Ginsburg, but my point is that in B-2 you find an explicit authorization for survey research, which is one of the very three topics covered in B-12 itself. When you look at B-4, you don't see anything about solicitation, which is the kind of explicit override that B-2 indicates Congress wanted or is necessary in order to conclude that another subsection overrides B-12's express consent requirement. Kagan Mr. Guerra, I have to admit that given what a mess this statute is, those three words don't quite do it for me. So, I mean, the argument against you, right, as to using B-12 to define B-4, is that, look, this is just a list of exceptions to a general prohibition, and no one is more general or specific than any other, and all you have to do is fit within one of them. And it doesn't matter whether you don't fit within two of them if you don't fit within one of them. So then the question would be, are you covered by B-4 or not, not are you covered by B-12 or not. Guerra Well, Justice Kagan, with respect, number one, I don't think you can so readily dismiss the interpretive import of those three words, because they don't have any function other than to override the express consent requirement in B-12. And if there's no need, if B-12 doesn't apply to any other subsection, there's no need to be overriding it in B-2. But we don't rely solely on that, the force of those three words. It's also the case that B-2, excuse me, B-12 is one of the core provisions of the statute in the sense that it's aimed at one of the fundamental problems that prompted passage of the Act in the first place, which was DMV's collecting information, then making it available to direct marketers. And so you are in a situation where you've got a core restriction aimed at a core problem the statute is designed to resolve, but whereas B-4 is one of the few subsections that authorizes access to the most sensitive information that Congress, excuse me, that DMV's were collecting. Roberts. It's kind of hard to argue when you've got Bs 1 through 14 that B-12 is the core provision. Usually it's one of 14 items in a list. Mr. Chief Justice, what I mean by that is that we know it's core in the sense that it's aimed at one of the core problems that Congress was addressing. And B-4, by contrast, is one of the few provisions in which Congress authorized access to the most sensitive information DMV's collect, such as medical and disability status and social security numbers. And we submit it simply implausible to think that a Congress concerned with undue private access to DMV information would, in the same statute, grant lawyers the right, a unique right, to use that highly sensitive information in order to engage in bulk solicitation. And in fact, the legislative record here is devoid of any evidence that Congress was aware that lawyers ever made use of DMV information for solicitation, much less that they or that they contemplated it, much less that Congress made a conscious decision to allow them. Ginsburg. You recognize that you could use B-4 to identify class members. We do, Your Honor. And that's because that is not a solicitation. That last notice is advising people who are not aware that there is pending litigation that could affect their rights. So if it's the solicitation, suppose this information was the recent automobile purchaser was asked, did you buy a car recently? Will you charge this additional fee, period? That would be okay? Your Honor, yes. It would be okay to – well, let me just say, if the person Then that would come under B-4. Justice Ginsburg, if I may just qualify my answer. Yes, if you were investigating claims on behalf of a potential client. I don't think people could just go down to the DMV and answer questions of personal interests to themselves, or lawyers for that matter. But that is an instance in which you are simply engaging in investigation, assuming that you are investigating a possible lawsuit, and not a circumstance in which you are engaging in solicitation. And that is a fundamental difference. Kennedy, well, aren't we going to be told the whole essence of a class action is you have to see if there is an injury that goes beyond some particular clients that you know. And isn't this – isn't this investigation in anticipation? Your Honor, Justice Kennedy, if they had limited their activities to conducting an investigation to determine the scope of a potential claim, we would have no quarrel with them. Well, the anticipation is are you willing to join the class? Isn't that critical? No, Justice Kennedy, I don't think so. And I think the point of B-4 is it's focused on proceedings, not on lawyers, and it's asking – its basic goal is to ensure that tribunals can do their job. Well, I do think you are helped somewhat by the chronological progression here. Is it including the service of process, which means the case has already started, and then investigation in anticipation of the litigation that follows the service of process. So it is true that there is a chronological aspect. In order, it seems to me, for the Respondents to prevail, they have to say that investigation in anticipation of litigation also precedes service of process. They would, and I think they do make that argument, Justice Kennedy. My point is that the focus of B-4 is on the tribunals and ensuring they have – they can have the information that they can do their jobs, which is to make and enforce judgments. Lawyers get information under B-4 when they act as officers of those tribunals, not for their own commercial benefit. When they act as officers of those tribunals, not for their own commercial benefit. Kagan, where do you get that from in B-4, the focus on tribunals rather than lawyers? Because, you know, the investigation is done by lawyers, right? And that's a critical part of B-4. So where does that come from in the statute? It comes from the phrase, For use in connection with any civil, criminal, administrative, or arbitrary proceeding in any Federal, State, or local court or agency. And then it includes things that are clearly done by lawyers. Right. My point is that lawyers get access when they act as officers of those tribunals, not for their own commercial self-interest. And an investigation in anticipation of litigation is an obligation that all lawyers have to ensure that they have a well-founded factual basis for bringing a lawsuit in the first instance. Are you saying that this letter must be either a solicitation or an investigation? It can't be both? Why can't it be both? Because, Justice Kennedy, the DPPA is designed to ‑‑ it was aiming at a fundamental problem of private individuals obtaining DMV information for commercial solicitation purposes. And Congress, we know, wanted to stop that in the absence of consent. So ‑‑ but by the same token, they wanted to make sure that they weren't intruding on the information that courts and other tribunals need to do their jobs. And so the distinction is you can engage in investigation because that's acting as an officer of a court in order to help the court ultimately render its justice in such a way. Ginsburg. On that point, would you ‑‑ I want to make sure I understood your prior answer. You said, I thought, that it would have been okay to get the information from the Bureau and then ask, did you buy a car recently? Did you have this additional charge? Now, suppose you said that was all right. Justice Ginsburg, I apologize if I'm not making myself clear enough. The vital distinction is between investigative activity to ensure that you have a well‑founded basis to file a lawsuit versus solicitation. And ‑‑ Ginsburg. Well, isn't that crystal clear here? Because the dealers were saying, you can't go forward unless you have a plaintiff to match every dealer. You're trying to bring a representative action, but your list of plaintiffs, none of them bought from Dealer Z. So we are investigating to see if we can have a representative action with a lineup of plaintiffs, each of whom has purchased from a listed defender. Justice Ginsburg, determining that there are enough plaintiffs to justify a class or group action is the investigative activity. But when you go on to invite them, and the Fourth Circuit ruled that these letters were solicitations, and that ruling is not before this Court at this point. Well, suppose we had what was limited to did you buy a car, did you pay the fee? And then somebody who ‑‑ I'm sorry, Justice Ginsburg. I'm sorry to interrupt, but something distracted my ‑‑ I couldn't hear the beginning of your question. We have just those questions. No, are you interested in joining the lawsuit, please call us. But somebody who receives this notice that just asks, did you buy a car, did you pay the fee, did you pay the charge, then calls the lawyer's office and says, tell me something about this letter that you told me, that you sent to me, and how does the lawyer answer? If the lawyer answers by asking investigative questions, when did you buy the car, were you charged these fees, were you advised, were they prominently displayed, all of which is gathering information for the lawsuit, then the lawyer is engaging in permissible investigative ‑‑ If the lawyer had said more, did you buy a car, did you get charged the fee, we're investigating this to determine whether this violates the law. Is that okay? It still is, Your Honor. The critical thing here is ‑‑ So the only thing that's bad is to say, come call us for a consultation? If you were interested in participating in this proceeding. And ‑‑ So what's the difference between that and how you answered Justice Ginsburg when she said class notice would be okay? Because class notice is not a proposal of a commercial transaction. It is notice ‑‑ Wait a minute. It's joining the class or opting out. Correct. And when you join the class, you have a commercial relationship with the lawyer no different than being a named plaintiff. The function of class notice is not to enable class lawyers to solicit clients. It is to enable courts to render binding judgments and to satisfy due process requirements so that people unaware of a litigation do not have their rights forfeited. That is fundamentally different than soliciting clients. And I realize ‑‑ Mr. Burr, that distinction, I understand that you are deriving some of it from B-12. But if I ‑‑ just assume with me that B-12 has nothing to do with anything and you were just limited to B-4. Can you find that distinction in B-4? Your Honor, I think the point here is that if you look at the conduct that's specified in the three examples, it is all activity that lawyers would be engaging in as officers of a court. And this Court has repeatedly recognized that there's a fundamental difference between lawyers acting in their own commercial capacities as opposed to officers of a court. And ‑‑ How is somebody conducting an investigation in anticipation of litigation, hasn't started yet, acting as an officer of the court? Because they are discharging their responsibility to ensure that they bring wellfounded claims and don't file suits without ‑‑ I mean, under Rule 11, you have to have a wellfounded factual basis for the allegations in the complaint. So you need to do ‑‑ But that just seems to me to be saying the lawyer is always acting as an officer of the court. Mr. Chief Justice, with respect ‑‑ When you're preparing a discovery request, when you're ‑‑ anything that the officer functions as. I think most times when you are engaging in litigation or pre-filing an investigation, that would be true, and that would be all protected under B-4. The difference is there is a distinction. This Court has recognized that lawyers have multiple capacities. They wear three hats. They are ‑‑ they represent clients, they are officers of courts, and they are commercial actors. Kagan. Mr. Gueri, don't you think, I mean, I understand the distinction, lawyer as commercial actor versus lawyer as officer of the court, but, boy, it's hard to get that from the words here. I mean, that seems like the kind of old‑time legislative interpretation where we just figured out the statute that we hoped Congress would have written as opposed to the statute that it did. I mean, tell me where, though, that distinction is in this provision. Well, Justice Kagan, for one thing, I think that even if you decide that B-12 is not governing B-4, it's still part of the statute, and it still demonstrates that Congress was concerned about people using DMV information in order to engage in commercial activity. And so the question, then, is here's B-4, which says we're authorizing use of information for use in tribunals. There is no mention of lawyers here. And so the question is, and this provision authorizes use of the most sensitive information that DMVs collect. So the question you have to ask yourself is, in light of B-12 and the fact that we know Congress was trying to stop use of DMV information for nonconsensual solicitations, is it reasonable to think that this clause authorizes lawyers to use disability status and medical information in order to go find and solicit clients? And I submit it is not, particularly if you take the same broad reading that the Court argued for the in connection with language, and you apply that to B-6 and B-10, then you have these truly incongruous results where this Court in Condon recognized that insurers were one of the purchasers of the information that DMVs were selling and using it to direct market, and yet in connection with underwriting, we've demonstrated would mean that that's an activity in connection with the business of insurance. Kennedy, I understand your argument about 12, but I do think you ought to assume we might interpret this statute so that each of these is independent and you have to concentrate on 4. You keep going back to 12 when we're talking about 4. We can talk about 4 for a minute. It seems to me that you might give away too much, because the statute says including service of process, which means the suit has to begin, and then investigation and anticipation of the litigation that will follow after that suit is committed. But you seem to give that away. You seem to think that investigation and anticipation of litigation can be before the suit is filed. You seem to concede that. I don't know why you concede that. I guess I've never understood that after service of process, it's still in anticipation of litigation. In my understanding, that's service of process. It doesn't necessarily follow that they are describing only what goes on in the court. And you just took the phrase, investigation in anticipation of litigation, in anticipation of, sounds like before litigation begins. I am not disputing that, Justice Ginsburg. My point, though, is even the B6 and B10 examples I just gave, Justice Kennedy, don't — it's not a reliance on B12 anymore. It's just demonstrating why it's implausible to think that the phrase, in connection with, should be read so literally that it authorizes anything that can be shown to have a connection with the subject matter. Sotomayor, you said earlier, and it set me to thinking, that why would an anticipation of litigation permit access to all of this very personal information? And I don't know that, yes, it does permit access, but only in anticipation of the litigation. So you have to prove before you get things like social security number, driver identification, anything else. All they asked for was names and addresses, I understand. Justice Sotomayor, that's true in this case, but if you read B4 the way Respondents are asking you to read it, there's no limitation in the statute that says you can specify. Well, I guess there is. There's a limitation that you're actually going to use it in relationship to litigation, number one, and the States are obligated to ensure that what they release is actually covered by one of these exceptions. If you interpret B4 to authorize access by lawyers in connection, based on the theory that they are in connection with some litigation, they will have access. You have to explain why. The request in this case simply said pursuant to B4 of the statute. No, no, no. As I read the first one, is we want to see if there's a pattern of overcharging, give us the names and addresses of people who have recently bought a car. That seems to me pretty specific as to what they want and why they need it. And I think it's pretty easy for the State to say this fits. Justice Sotomayor, two points. The four requests that followed after the first two said nothing of the sort, and the State gave them the information. It just said pursuant to the subsection that we're talking about right now. In addition, there's no reason why lawyers couldn't go in and say, I would like to identify, I'm investigating whether people have claims for disability claims or are based on their medical status, and I'd like information of that ilk from the DMV. B4 authorizes those, the provision of that information, and it doesn't say that there has to be some heightened showing by the lawyers in order to obtain it. Kagan, suppose I'm a lawyer and I want to bring a toxic tort case, and I'm really looking for witnesses who have the same kind of symptoms as my client had. And so I put out a letter saying, you know, have you been exposed, and tell me about it so that I can find out if you're a good witness. And, you know, if you have, I would also like to represent you. Would that count? Two points, Justice Kagan. The first is that you've highlighted why this is such a unique loophole for one very discreet class of lawyers. Most toxic tort lawyers cannot go to a DMV and say, I need the names and addresses of people. Well, I guess what I was suggesting was that if I were just asking for witnesses, you would have to say that that was included by B4. I do. Is that right? I do acknowledge that. So now the court, the lawyer is saying, in addition to your help as a witness, if you have the same symptoms, you know, you can join the suit. And I think that that's an improper use. The Congress did not create this authorization to go down to get the most sensitive information in order to enable lawyers to find clients more easily than they might otherwise find them. And so investigation and anticipation of litigation is one use that Congress authorized, and as I've suggested, it's a use that helps a lawyer discharge his or her responsibility to a court. Asked for something else. Ginsburg. I don't know why this case doesn't fit that description, because the position that the dealers were taking was you can't — you want to maintain a representative action. The State has such an animal. It's not quite a class action, representative action. To qualify, the group must be numerous. So how am I going to find out if it's numerous without asking these questions? You could ask every question up to would you like to be a plaintiff in the lawsuit, and that would be fine. That's the dravage law. But might that get the lawyer into some difficulty with the Bar Association? They'll look at this and say, look, we told you if you are seeking clients, then you have to put advertising material. And a letter like that would tip the recipient off to something is going on, I should find out about it, and maybe I should join it. Justice Ginsburg, I think that the fact that that might trigger an obligation to make a disclosure is not dispositive of whether it's a solicitation. It would still be an objective factual inquiry. And if there were no indications in the letter that somebody is being invited to join a lawsuit, then it would be permissible investigation. I would like to point out, though, in terms of why they needed this information, these lawyers filed suits initially against dozens and later against hundreds of defendants where they had no client with any claim against that defendant. Then they went to the DMV and they found over 30,000 names and addresses and sent out what the Fourth Circuit determined were solicitations in order to get clients the claims they had already improperly asserted. They did not need that information to indicate the interests of the named plaintiffs  Those people had standing to sue. Ginsburg-Gilmour-Ross But then there's a whole string of defendants who were doing the same thing, the same allegedly unlawful practice, they couldn't reach without getting additional plaintiffs. Roberts-Gilmour-Ross But their clients have no interest or need to reach those other dealerships. They have a claim against the dealers with whom they dealt. Ginsburg-Gilmour-Ross But their client is a group. This is not an individual action. Roberts-Gilmour-Ross That's true, Justice Ginsburg. Ginsburg-Gilmour-Ross The statute says, sue for the benefit of the whole. Roberts-Gilmour-Ross And the South Carolina State court said that each named individual could sue for the benefit of everyone who dealt with the same dealer that that plaintiff dealt with. So there's no inconsistency. And, of course, even if they want to try to affect the conduct of the dealerships with whom their clients never dealt, they can still get declaratory relief. I'd like to reserve the balance of my time. Roberts-Gilmour-Ross Thank you, counsel. Mr. Clement. Clement Mr. Chief Justice, and may it please the Court. The DPPA is an unusual statute. It directly regulates the State's use of their own databases and imposes massive civil liability and criminal penalties for violations. It regulates it in a relatively distinct way, which is it makes disclosures presumptively unlawful, but then has 14 permissible use provisions for which the State may, it does not must, may disclose the information. The scope of those 14 permissible use provisions then becomes quite important for determining whether or not a statute that was originally designed primarily to regulate the commercial sale of DMV information becomes intrusive into matters of traditional State regulation or imposes massive liability without the requisite clarity. Now, I would have thought that it was fairly clear that but for a resort to the specific controls of the general canon, that all of the activity at issue here comes comfortably within the language of B-4. Because if you look at that language, it is remarkably broad. Congress uses the word any three times. It uses in connection with, which I think we all know is a term of breadth. And then it uses including and uses illustrative examples. And I think the only thing that really brings these examples together is Congress seems to be covering the litigation process from cradle to grave. One thing we also know about the in connection with language is that we've said it can't really mean in connection with as broadly as that, the Morales case, I guess. It has to have a more narrow meaning, otherwise everything would be covered. Oh, Mr. Chief Justice, that's exactly right. But the whole reason it has to have some limit is because it's presumptively quite broad. And if, I mean, for those that look at legislative history, the evolution of this provision as it was changed twice in the legislative process, and it started out that Congress was going to have a permissible use just for use in litigation involving motor vehicles. Then they dropped motor vehicles and just said use in litigation. And then in the final iteration, they said use in connection with litigation. So clearly they were trying to broaden it. Now, I would be the first to admit that there has to be some limit. And we certainly wouldn't say, for example, that if lawyers, you know, decide in this case, well, you know, we got this DMV information for perfectly legitimate purposes involved in the litigation, but now we're sitting on a goldmine, so we should try to sell these same people floor mats or wiper blades or something. I mean, of course they can't do that. So there are limits. But I think they do this. Can lawyer Smith say, you know, there are some products in this State that I really suspect are not being properly made, and I have probably a tort suit, but the damages are awfully small. I would like to get 10,000 or 20,000 plaintiffs. I wonder if there is anybody interested. And then what he does is I have to write him a letter, and I know where I can get the names and addresses from the DMV. So he goes to the DMV and says, I'd like the names of everybody who — I'd like all your names and addresses. And I intend to write them all, send them a letter, and say, I suspect there is some fishy business going on here in the dress manufacturers, and would you like to tell me about what happened? Is that possible? Can they do that? Clements, it may or may not. Breyer, is there a reason? Clements, well, I think there is. What do you want? Sotomayor, can I just say something before we talk about that? You know, if they are really trying to go after the dress manufacturers, they can go to the phone book, they can go to the title records office. There are lots of places they can go if what they want is just general information about people. And the only State database that Congress has seen fit to regulate is DMV data. Breyer, maybe this is all passé. Perhaps they could get this information elsewhere, but I guess we have to deal with this statute. So maybe what they want is they want the names of all the people who have ever had a car, you know, because they think there is something special about a car, and they think that's going to be connected. But you see what I'm driving at, and you have no lawsuit, but you're going to get one if you can, and you have grounds for thinking that there are some suspicious defendants, and what you are looking for is plaintiffs, that's all. All you are looking for is plaintiffs. Now, can you under this statute go and get the information where all you are looking for is plaintiffs for your lawsuit? So far, you know how many plaintiffs you have? None. Clements, I think actually the best answer at the end of the day is it depends on whether you are focused on a specific transaction occurrence defect. So I think you might ultimately Breyer, is your answer, what I have in my mind, I'm just repeating the same question. I'll do that. I have some reason for thinking there are a whole bunch of defendants here who have done something wrong. All I'm lacking is a plaintiff, and what I want to do is get the names of potential plaintiffs. It's the same question. I've asked that three times. You can, in your view, get it under this lawsuit, or you cannot. Clements, I would say the best answer is that you can if you don't like that answer and you want to draw the line. Breyer, No, no, neither liking nor disliking. All I want to know is what's the answer. Clements, Here's the thing. I think there's a couple of places you can draw the line, and I think there is a line drawing question any time you have language like in connection with. The first would be, okay, I'm lawyers and I want to get clients for litigation. You could say, well, that's enough of an in connection requirement so you can use it. I would say that that's probably on the other side of the line, but you could just say that's close enough. The other place you could draw the line is when you have a specific transaction occurrence defect so that there would be a difference. If I get this information and send people letters that say, I see you bought a new car in the last two years, you know, there's a lemon law on this thing. Breyer, Now, if that's the line, as to some of these defendants, what he's saying is these lawyers had no client that my defendant hurt, none. And as to some of these, but not all the requests, all they were doing was they were looking for somebody who bought a car from me. And the reason they want that is to ask them what the practice was so they can get a plaintiff to do what, complain about. So at least two or one or two of the requests are like that. No, they're not in the following sense, Justice Breyer. Okay. Just to understand kind of the chronology here. No request, FOIA request is made at all here until my clients have been approached by individuals who are complaining, okay? No letter goes out until the litigation is actually filed. Now, they would think that they would think that they would think that they would What I'm trying to get at is the statement that I could write in an opinion that will draw the boundary of this provision south of, well, the lawyer can go out when he has reason to believe that a defendant has done something wrong and, to use a pejorative, troll for clients. I want it south of that. And now you will tell me the words I can use that will both help your client, because they'll cover this case, but will also be south of that. What are the words? What is south? I don't have a compass here. South means — south means it does not — you can't just go and troll for clients simply because you think a defendant has done something wrong and you have no client. If you want to draw the line south of the trolling line, then I think what you would say is, this is an easy case because no communication took place until my clients had a client, and then they want to say, well, wait a second, your clients didn't have a beef with the other dealers. That's wrong. At all times in this suit, they had a conspiracy claim against those other dealers. So even as to the individuals they already represented, they had a beef with those dealers. Kennedy I want to interrupt just for one moment. I may have misheard or you may have misspoke. I thought you said that no request was sent until the suit was filed, but the request was — the first FOIA request was June 23, 2005. The second FOIA request was August 24, 2006, and this Heron suit was filed August 29, 2006. So letters were sent before the suit was filed. A FOIA request was made before the suit was filed. No letter to a potential witness-slash-client was sent until after it was filed.  Yes, but the FOIA suit was made before the suit was filed. Clement Sure. And the FOIA — the two FOIA requests that were made beforehand were specifically noted that they were in anticipation of litigation, and they were investigating, as Justice Ginsburg suggested, as they needed to under State law, whether this was a widespread practice. And I'm — Ginsburg Suppose you said that you had a few people came and complained to the lawyers and then the lawyers wanted to see how widespread this was. Suppose the lawyer herself bought a car recently and she got this administrative fee, and now she has no clients who have approached her, but she'd like to find out how many similarly situated people there are so she can get one of these representative actions going. Could — on that basis, would it be permissible to use — would that come under the litigation exception? Clement I think it would, Justice Ginsburg, because I think that when you're trying to figure out where to draw the line, you look to the words in the statute, which you know that investigation in anticipation of litigation is covered. And I would think that would fit comfortably within investigation in anticipation of litigation. And that in— Roberts It would be — it would be a very poor lawyer who couldn't figure out how to write the letter he's going to send out in a way that it could not be said to be investigation as opposed to solicitation. If you have a problem with the windshield wipers, you just send a letter saying there's this big problem with windshield wipers. I'm a lawyer. I'm representing, or I hope to represent, I will represent a group of people who have this problem and I think will recover some damages. Would you like to be a witness in that case? That's in anticipation of litigation, but it's also quite plainly an effort to solicit clients, not just witnesses. Clement I couldn't agree more, Mr. Chief Justice, which is why the line can't really be between investigation in anticipation of litigation and solicitation in anticipation of litigation, because that's too thin a line to make a $200 million difference. Roberts So where is the line? Clement The line is whether or not it's in anticipation of litigation or in connection with litigation. Roberts No, that's the words of the statute. I'm trying to figure out what they mean. If you think there's some type of solicitation that the statute was meant to prohibit, how do you draw a line that prohibits that but allows the sort of thing that you want to do? Clement I think the way you do is you would basically say that when they're saying in anticipation of litigation, they mean anticipation of a particular litigation, particular problem, and so it's different. Roberts That doesn't have to be filed in court. That may just be residing in the brain of a client. It doesn't have to be in the brain of any lawyer who's looking for work. Clement No, they're concerned about a particular thing, and I think the in anticipation of litigation language, I mean, that's not the only time you've ever seen that. Scalia It's not just that language that says investigation in anticipation of litigation. If I understand you correctly, you're saying investigation includes solicitation. Isn't that your position? Clement I think it is, though I guess my point would be even if you can identify some solicitation that's not investigation, as long as it's in connection with litigation, it's in B-4. Breyer So you're saying that really this is a the way the statute works is it says nobody can solicit but for lawyers, and that's not that makes more sense than you might think, because this was not a statute that was meant to interfere with solicitation rules. It was meant to interfere with commercial selling, and that's what this was about. And there is a requirement. The requirement as to the lawyer in good faith has to believe that if he finds a client, there's a case. I agree with everything except the first thing you said, which is that this is a prohibition on solicitation. If you look at the structure of the statute, it says presumptively you can't use this for anything. And then there are 14 permissions. And some of the permissions, like B-4, are unconditional. If you come within B-4, you get to use it. Now, when you get to the end of the statute, which I respectfully suggest is not where you put the core provisions, it's where you put the less favored provisions, then you have in B-12 a conditional permission that you can use it, but only if you get consent. Now, the thrust of their position is if you're in one of the unconditional permissions, but you also are presumptively in one of the conditional permissions, somehow that condition from B-12 hops over to B-12, B-4, and says no. Scalia I don't think that's fair. I think their position is to harmonize B-4 and B-12, you have to interpret investigation not to include solicitation, because otherwise you have a conflict. That B-12 prohibits solicitation unless you have the consent, whereas B-4, which says investigation, does not require consent. Now, the two exist in perfect harmony if investigation does not include solicitation. But there's a discrepancy between the two if it does include solicitation, and you have to say, well, this is an exception from B-12. Clement No, you don't. There's no discrepancy. A conditional like, you get a green light for use in litigation, you get a yellow light for solicitation. If you have solicitation in connection with litigation, you're covered by both. You take the green light, there's no conflict. And the premise for your discussion was we have to harmonize. I would take issue with that. If you look at these 14 exemptions, there is tons of overlap in them. Congress is not telling you that each of these 14 exceptions has an exclusive area, and you have to find out which field is preempted by 1, 2, 3, 4, 5, 6, 7. If you look at B-1 and B-4, there's complete overlap. One of the things I would take issue with is my brother said that, well, B-4 is about the tribunal. No, it's not. B-1 is principally about the tribunal. B-1 is the provision that talks about government actors and their functions. And it specifically talks about courts. Alito, B-4 is about very sensitive information. You're talking about people's social security numbers. You're talking about whether the person has a disability that they may not want to disclose to the general public, the person has Parkinson's or epilepsy or is diabetic. And so you're just you're saying lawyers get a they get all of that stuff. Nobody else can, but lawyers are a privileged class and they get it. Justice Alito, it's important to recognize lawyers presumptively get it under Federal law, but Federal law is only a floor. And so let's take social security numbers, please, because sure, as to B-4 and B-1 and two other provisions, Congress says presumptively you could get social security numbers. You know what the State of South Carolina says? You never get social security numbers unless you have a court order. They put that right in their State FOIA law. And so that's just another example of how this is a Federal floor. States can release this information. They don't have to. And to Justice Breyer's point, it makes sense that you would distinguish between an attorney who is subject to the bar discipline, is subject to oversight in the solicitation process, and treat that solicitation differently from a solicitation by a direct marketer, which is what B-12 is clearly aimed at, not the practice of law. Breyer, the difficulty that Justice Alito brings out is I see your interpretation and I hope the other side will give me some line, because they have the same problem in reverse. What is the line? But your way, it doesn't become that much of a privacy statute. It's sort of a misnomer. It's a statute that is designed to prevent the commercial use of your – of this personal information. It's not really a privacy statute. It's certainly not an all-purpose privacy statute. I do think that's fair. And the principal thing they were concerned about, of course, is that you could look at somebody's license plate and indiscriminately go down, pay a fee, and get their home address. Now, the one thing we know from B-4 is if a lawyer wants to do that exact thing to serve process, the lawyer gets to do it. You can get somebody's license plate, go to the DMV, get an address and serve process. And they specifically preserve that. So we know as to the core of the statute, they treated lawyers differently. They were also concerned with direct marketers taking this information and using it to market people. But I don't think you'd lump lawyer solicitation in anticipation of litigation, which may put some limit on it. Kennedy, in other words, Kennedy, but in anticipation of litigation does come after service of process. And an additional way to harmonize this statute with 12th is to say that after the litigation, then in anticipation of the litigation that that suit will engender, then you may get the information. But you didn't do that. There's two problems with that way of looking at the statute I think I would respectfully suggest, Justice Kennedy. One is, we're talking about items on an inclusive list. So even if you took your premise that the anticipation of litigation in that list somehow is anticipation post service of process, which I want to come back to, even if you took that position, they're just things on an inclusive list. And so it wouldn't stop you from saying that the ultimate test here is whether it's in connection with litigation. But I guess I would go back to that and say I never once thought that investigation in anticipation of litigation was something that would take place after service of process. I thought, I mean, forget it. That's the way the statute is written. Yeah, but I don't think that that was an intentional thing on the Court's part, that we're going to name these and we're going to name them in chronological order. If they tried to do it, I think they got it wrong. Sotomayor, Mr. Clement, I'm not sure I'm satisfied with the answer you gave to Justice Scalia. He said, look, we've got to harmonize. Instead of general specific, solicitation of clients is different than investigation, and we just say they're mutually exclusive. It is a little bit of a general and specific, and that's proven by B-2, because when B-2 wants to permit solicitation, it expressively says it. And they didn't expressly say solicitation in form. That's, I think, your adversary's main argument. And I'm still not sure I'm comfortable with the answer you're giving. You're saying they're independent, but why are they necessarily conflicting? Clement, last word, conflicting? Conflicting, exactly, or conflicting or overlapping. I think they're I guess it's, why are they necessarily overlapping? I think they are necessarily overlapping, and I guess I would point to several things. First of all, the language in B-2 I don't think helps them nearly as much as they do. I think that language in there about survey research, like much language in many statutes, maybe avoids the marketers or the motor vehicle marketers from having to be here in a lawsuit, because it removes all doubt about it. But I think they would be covered even without those words. But the point is, you may say, well, that's horrible, that's superfluous. But no, if you look at the way the statute operates generally, there's lots of overlap. So this isn't a context where you want to make sure that there's no overlap and everyone operates independently. I pointed to B-1 and B-4. They both cover courts and litigation. If this Court uses DMV information in its opinion, it's covered by B-1, it's covered by B-4. Or look at B-3. B-3 is a provision that says generally companies can use DMV information to verify somebody's identity. And then it specifically says, and if somebody lies to you about their identity, you can pursue legal remedies. Okay. When you're pursuing that legal remedy pursuant to B-3, you're also doing things in connection with litigation. Roberts. Roberts. Well, that's right. I understand your point that this is they're not separate categories and there's no overlap. But the word is harmonizing. And the problem is we have to give some limiting construction to in connection with. And it seems to me that if you're involved in that endeavor, it does make sense to see how what you're going to cover under the in connection with relates to what's exempt under the other provision. But as we've discussed, Mr. Chief Justice, if you're saying you're not going to apply the specific controls to general, but you may be using a junior varsity version of it to harmonize the statute. Exactly. As we suggested in our colloquy, I think the line between solicitation in anticipation of litigation and investigation in anticipation is far too thin a line to make a $200 million difference. And if I could direct the Court to page 93 of the Joint Appendix, because that will show you just an example of the postcard that is attached to these letters. And the postcard does ask, specifically as Justice Ginsburg was suggesting, again, this is at 93 of the Joint Appendix, it asks people to fill out their name, address, the dealership they bought the car from, the type of car, and then the administrative fee or processing fee that was charged. Now, I think it's common ground between the parties that we get to ask about that administrative or processing fee, because that's investigation in anticipation of the litigation. As I understand where my clients arguably made a $200 million mistake is by adding the line, I'm interested in – if I'm interested in participating signature. That crosses the line into participation. Breyer, the reason that would be so, I agree with you that it's very hard to figure out what the line is here between the investigation and solicitation. But that's where this solicitation thing comes into play, because what it – the words that go the other way, in my mind, that cut against you, is that this card could have asked for Social Security numbers, I guess. Not under South Carolina law. Under South Carolina law, but then under another State, under this statute, they could. Now, that's helpful, that answer. But if – when I think of asking for Social Security numbers, the words that exaggerate it, but they go through my mind, are identity theft run wild. And if that is a concern, if that is a concern, then by reading this as a solicitation, you know, the pure case, and throwing the other exception to cover it, you force the State to focus on it. And the State then has to decide whether they are going to permit or not permit the solicitor, who you see might include the lawyer here, to ask for the Social Security number. And better to have them focus on that decision. That's the connection that I see between the two. But, Justice Breyer, let me try to help you this way, which is, first of all, every State in the country is focused on identity theft. And the only circumstances in which I can imagine a State ever giving Social Security numbers to a lawyer is if their case was, you know, these car dealers are putting the Social Security numbers in forms and prosecuting the statute. Breyer. Do we know that, by the way, that's helpful, because do we know under how many States' law the DMV would be forbidden to give Social Security numbers? I don't know that offhand. I can get that to you in a supplemental letter. I just know South Carolina, it says right in their FOIA statute, you can't get that information. And like I said, the only situation, it's kind of, if you think about it. Sotomayor, isn't there a Federal law to that effect? What's that? There may be a Federal law to that. Right. And it may be lawyers, it may be lawyers want to enforce that Federal law against the dealers, and in enforcing that Federal law against the dealers, they might ask for the information. It's the same kind of thing. The only circumstances in which I can imagine a State would ever give a lawyer disability information is if they were bringing an ADA suit. If they're bringing an ADA suit against a dealer, you might actually want them. If they're thinking they might bring an ADA suit. Fair point. Your position does create a special, the point your friend makes, it does create a special exemption from the solicitation bar for lawyers. Lawyers can solicitate, you know, Acme products can't. Well, sure, but they can solicit for their legal services in connection with litigation. And that, I think, is fair. In connection with something they hope might someday become litigation, depending upon the answers they get. Well, again, if you're going to draw a line, there's two things here. You know, there's an impulse to draw a line in connection with, and at some point you will have to. But I don't think solicitation provides the line. Because there's a difference. Kagan. Kagan. Can I ask about your line, Mr. Clement, and let me just see if I understand it, and I'll give you two things, and I think one falls on one side of your line and the other falls on the other, but this is just to clarify where your line is. One is, you know, I'm a lawyer, have you been in a car accident lately? If you have, contact me, and I would love to represent you. The other is, I'm a lawyer, I think that there's a real, I'm bringing a lawsuit about these red light cameras and saying that they're unlawful, and would you like to join me in that litigation? What? Am I right to think that the first falls on one side of the line, it's not enough, there's no litigation there, and the second falls on the other side, according to you? Clement. I think that's right, Justice Kagan, and I just want to emphasize that my clients fall on the other side of even yet another line, which is they already had clients before they asked DMV anything. But your line is a contemplated litigation. Yes. A specific contemplated litigation. Exactly. Or to put, to give you just another sort of example, this seems to me what clearly should be covered is, okay, I understand there's a defect with the particular make and model of car. I've used the DMV records, consistent with State law, to get access to the fact that you've bought one of those cars. Do you want to join the suit? I don't think there's anything nefarious with that. There's certainly no need to join the suit. So do you want to start the suit? It doesn't matter in your position. Yes, that's not my case, because these people came to us before we did anything. But I don't think there's anything wrong with that, Your Honor. And, yes, you might say it's solicitation, but I don't think if you look at these cases, there's no permissive uses. Alito, I think when it uses in anticipation of litigation, it actually wants to use  to cover activity that takes place before there's an actual proceeding. And what I was going to say is, you know, that language doesn't come out of the ether. I mean, that's the language you use in attorney work product. And as I understand it, I've looked into this a little bit, the basic rule there is you distinguish between litigation in the abstract and the point at which you've identified a particular transaction occurrence defect, and at that point, if you're doing something, it's in anticipation of litigation. The one other point I haven't yet made, which is, to the extent you're going to resort to the specific controls of the general, I think it is worth noting that this would be the first time that I'm aware of that the Court would ever have applied that canon to impose this kind of massive civil liability and even potentially criminal liability. And I don't know which is specific and which is general. I mean, that's the problem I have with that. I agree. And I think that's the best reason why the canon doesn't work. These are equally specific. And in the case of an overlap between the two that you have here and you have in B-1 and B-4 and B-3 and B-4, you just say, okay, Congress thought it was okay. And you just call it a day. Kagan, what do you say, Mr. Clement, the junior varsity version of the — which is stronger than the other one, is something like, B-4 is hard, we have to draw a line someplace, we can look to B-12 as expressing some kind of concern that we can use to draw that line. Clement, and the reason I think that's not a conflict, we don't have to — you know, it's not inconsistent, it's just, this is an expression of what Congress was thinking about, we're going to use it as a clue. Right. But the line-drawing problem is really drawing the line about in connection with. The line-drawing problem — drawing the line between solicitation in anticipation of litigation and investigation in anticipation of litigation just doesn't work. They're two sides of the same coin. As Justice Ginsburg pointed out, if my clients had sent a letter that nobody objects to that says, we're bringing a lawsuit, we think you may have been charged the same kind of fee, I think what the State bar would have said, the natural next question for anybody getting that letter is, will you represent me? And precisely because of that, we want you — we want to treat this like it's solicitation and we want to add these additional bells and whistles. And part of the irony here is I think the things that make our letter look most like its advertisement or solicitation are the things that are required by the State bar. And keep in mind, that's yet another reason why treating attorney solicitation differently from general solicitation makes perfect sense, because they're subject to the State bar. Scalia, I don't understand what you're saying. You're saying the State bar requirements would have required you to say, are you interested in joining the lawsuit? Well, and they would have said it's so natural that somebody will say, can I join your lawsuit, that they would require all the language that says you have alternatives, other people can hire you. Well, that's because the State is allowing solicitation and it puts certain conditions on what your solicitation. Exactly. You point to page 94, you say, oh, it's just the last line. The whole thrust of the letter was solicitation. You have to be fair about it. Exactly. And, Justice Sotomayor, the last thing you can infer from this statute is that Congress wanted to, the first time ever, get in the business of managing attorney solicitation, a subject they had always left to the States. And with the other things that you said, Justice Sotomayor, I don't know if that's true. Sotomayor, I just want to, before you leave, because in response to Justice Kagan, I think you've changed positions a little bit. You started by saying there were three ways to draw a line. Getting clients is okay. Getting clients is okay if you get a specific treatment occurrence or defect, and you didn't mention what the third was. So what's your preferred reading? My preferred reading is that transaction occurrence defect, which I took her red light camera to be an example of a particular identified defect. But I do want to emphasize before I sit down, it's the last thing I'll emphasize, that my case is a little bit better because we had a client and a specific defect before anything happened. Roberts. Thank you, counsel. Mr. Guare, you have 4 minutes remaining. Guare. Thank you. First of all, I'd just like to point out the consequence of Respondent's argument is that they gave the example of going to get the license plate and then getting the name and address to serve process. But on their theory, you can also go down and you can witness an accident on the side of the road. You can go down to DMV, get the name and license, use the license plate to get the name and address, and send a solicitation letter. And that is trolling. And I think everybody, as I understand it, the line seems to be everybody wants it somewhere south of trolling, and yet. Breyer, why don't you give us the line that's north? Not north of trolling, but south. My line is north of trolling, but you understand the point. What's your line? Our line is solicitation, Justice Breyer, and there are two ways to get that. There is the — what we, I submit, is the strong textual evidence in B-2 that Congress did, in fact, understand that the consent requirement governs all bulk solicitation or surveys or marketing, and had to give an explicit override in B-2, because otherwise B-12 would have restricted the ability to do non-consensual solicitations. In the middle of the class action, several of the clients, the only ones who brought the cars, which there is loads of evidence they're defective, from the dealer Smith, die. And they want to see if they can find three others so they don't have to dismiss them from the class. They're almost certain, as loads of evidence there is, the, you know, the harm caused by the defendant. They are missing a client. They died. And so can they get it then? I'm not sure I understand. Can they go to the board and say, look, dealer Smith here, we're in the middle of the case, we're finished with discovery, we're just — he just died, and we want to find three others. We're sure there's loads of evidence here that there were 100,000 others who bought this defective thing from this defendant. We want to find out the names of addresses. Can they get it or not? For purposes of soliciting new class representatives, I think not. And I think there are loads of ways to find class representatives without going to DMVs. And in fact, that's what most class action lawyers have to do, is advertise one fashion or another. So that's not, to my mind, an incongruous conclusion. But I would just point out that according to Respondents, the phrase survey research is surplusage. And this Court says that's — you're not supposed to reach that conclusion if you can avoid it. And you can avoid it by understanding it to be — the meaning — its effect is to override the consent requirement so that you can do commercial bulk surveys in B2, which would otherwise require consent as a consequence of B12. And then there is the so-called junior varsity harmonization basis for reaching solicitation. And I would point out that Respondents are saying it can't be that you — that some certain statements in a letter means you crossed the line into solicitation and that that has all kinds of massive civil liability consequences. Congress used the word solicitation in this statute. Congress meant to draw some kinds of lines around solicitation. Now, admittedly, we're saying that the harmonization means that that's the same line you would draw in B4. But it's not inconceivable to think that Congress was drawing a line at solicitation and that liability would flow depending upon whether somebody crossed it or not. Kagan. Kagan. But Mr. Gueri didn't draw the line at solicitation in B4. And the advantage of Mr. Clement's argument is that the line that he sets up actually has a textual basis in B4 because it focuses on words like what is a litigation and what is a proceeding and are we there yet. And that seems to be what the language of B4 indicates. Your Honor, our point is, sort of, if you step back and you have — this is the question for the harmonization purpose. B4 covers solicitation only because of the indeterminacy of the phrase in connection with. Without that language, there's no basis for saying B4 is authorizing large solicitation. So it is, I would submit, at the periphery of the authorization that B4 provides. B12, solicitation is at the core of what that provision is about. And that the mass marketing of using DMV information is one of the fundamental problems Congress was addressing. And I just think it's implausible to conclude that the at-the-periphery concept in B4 should take precedent over the core function of B12. Roberts. Thank you, counsel. The case is submitted.